O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTHA REYES,               ) | NO. CV 13-4850-MAN |
| Plaintiff,   ) | |
| v.                 ) | MEMORANDUM OPINION AND ORDER |
| CAROLYN W. COLVIN,      ) Acting Commissioner of Social ) Security,                       ) | |
| Defendant.   ) | |
| _____ ) | |

On July 15, 2013, plaintiff filed a Complaint seeking review of the denial of her application for a period of disability, and disability insurance benefits ("DIB"). (ECF No. 3.) On August 6, 2013, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (ECF No. 9.) On March 17, 2014, the parties filed a Joint Stipulation, in which plaintiff seeks an order reversing the Commissioner's decision and remanding this case for the payment of benefits or, alternatively, for further administrative proceedings; and the Commissioner requests that her decision be affirmed or, alternatively, remanded for further administrative proceedings. (ECF No. 17 at 20.) The Court has taken the parties' Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

On July 19, 2010, plaintiff filed an application for a period of disability and DIB. (Administrative Record ("A.R.") 10.) Plaintiff, who was born on March 19, 1977 (*id.* 19),[1] claims to have been disabled since June 15, 2008 (*id.*), due to depression, anxiety, and panic attacks; hearing voices; insomnia; post traumatic stress syndrome; OCD; and fibromyalgia (*id.* 129). Plaintiff has past relevant work experience as a data entry clerk, loan application clerk, and case aide. (*Id.* 19.)

After the Commissioner denied plaintiff's claim initially, plaintiff requested a hearing. (A.R. 10.) On February 29, 2012, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Joel B. Martinez (the "ALJ"). (*Id.* 10, 26.) Vocational expert ("VE") Laurence Gordon also testified. (*Id.* 10.) On April 13, 2012, the ALJ denied plaintiff's claim (*id.* 10-21), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (*id.* 1-3). That decision is now at issue in this action.

**SUMMARY OF ADMINISTRATIVE DECISION**

In his April 13, 2012, decision, the ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2013, and that plaintiff has not engaged in substantial gainful activity since June 15, 2008, the alleged onset date of her disability. (A.R. 12.) The ALJ determined that plaintiff has the severe impairments of obesity, fibromyalgia, and depression. (*Id.*) The ALJ concluded, however, that plaintiff does not have an impairment or combination of impairments that meets or medically equals the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (*Id.*)

---

[1] On the alleged disability onset date, plaintiff was 31 years old, which is defined as a younger individual. (A.R. 19 (citing 20 C.F.R. §§ 404.1563).)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform light work, except that she: can perform postural activities only occasionally; cannot be exposed to extreme temperatures; cannot climb ropes, ladders, or scaffolds; cannot work around heights or hazards; is limited to simple work; can have no public contact; and can have occasional contact with peers and supervisors. (A.R. 12.) In making this finding, the ALJ considered the subjective symptom testimony of plaintiff, finding her credibility to be "poor" (*id.* 19), as well as the medical evidence and opinions of record (*id.* 13, 18-19).

Based on the testimony of the VE, the ALJ found that plaintiff is unable to perform her past relevant work. (A.R. 19.) Based on plaintiff's age, education,[2] work experience, and RFC, as well as the testimony of the VE, the ALJ found that plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," including the jobs of electronics worker (Dictionary of Occupational Titles ("DOT") No. 726.687-010), small products assembler I (DOT No. 706.684-022), and bench assembler (DOT No. 706.684-042). (A.R. 20.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by

---

[2] The ALJ determined that plaintiff "has at least a high school education and is able to communicate in English." (A.R. 19 (citation omitted).)

inferences reasonably drawn from the record." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Comm'r of Soc. Sec., 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Carmickle v. Comm'r of Soc. Sec., 533 F.3d 1155, 1162 (9th Cir. 2008).

## DISCUSSION

Plaintiff asserts two sources of error. First, she contends that there is a DOT inconsistency in the ALJ's finding that she can perform the jobs of electronics worker, small products assembler I, and bench assembler. (Joint Stip. at 3.) Second, she claims that the ALJ failed to properly consider her testimony and make proper credibility findings. (*Id.*)

**I.   There Is An Apparent DOT Inconsistency Between Plaintiff's RFC And The Representative Positions Suggested By The VE.**

In plaintiff's RFC, and in the ALJ's hypothetical to the VE, the ALJ included a limitation to "no heights or hazards," without any further explanation. (A.R. 12, 65.) Plaintiff contends that this means she "cannot work around hazards, such as dangerous machinery including power tools." (Joint Stip. at 6.) However, each of the DOT descriptions for the three representative jobs suggested by the VE includes tasks involving the use of hand or power tools, and the jobs of small products assembler I and bench assembler also mention the possible use of other machines such as arbor presses, drill presses, taps, spot-welding machines, riveting machines, pneumatic clinching gun, milling machines, or broaches. DOT Nos. 726.687-010, 706.684-022, 706.684-042. Plaintiff argues, therefore, that the RFC would preclude her from performing these jobs because they require working around hazardous power tools, which, "if not used properly or paying attention to what you are doing, then you could seriously injure yourself or another employee. One could cause a serious cut in her hand or amputate a finger." (Joint Stip. at 6.) The Commissioner argues that, as defined in the Social Security Rulings, "hazards" are "Not Present" for these positions. (*Id.* at 17-18).

Preliminarily, the hazards defined in the DOT include *moving mechanical parts of equipment, tools, or machinery*; electrical shock; working in high, exposed places; exposure to radiation; working with explosives; and exposure to toxic, caustic chemicals. Soc. Sec. Ruling 96-6p, 1996 WL 374185, at *9 (emphasis added). With respect to each of these categories of "hazard," including "moving mechanical parts," the DOT description for all three jobs, except for the electronics worker, state "Not Present – Activity or condition does not exist." The only one of these "hazards" specifically identified for the electronics worker position, is occasional – up to

one-third of the time – exposure to toxic, caustic chemicals.[3] DOT No. 726.687-010.

Courts appear divided on the question of whether these are jobs that require work around dangerous or hazardous machinery. See Lair v. Colvin, No. ED CV 12-932-SP, 2013 WL 1247708, at *4 (C.D. Cal. Mar. 25, 2013); compare Shannon v. Astrue, No. EDCV 10-359 AGR, 2011 WL 3420846, at *2-3 (C.D. Cal. Aug. 4, 2011) (assembler of small products I does not require work with dangerous equipment in contravention of the plaintiff's RFC precluding operation of dangerous equipment); Ballesteros v. Astrue, No. ED CV 10-301-PLA, 2011 WL 836656, at *3-4 (C.D. Cal. Mar. 8, 2011) (finding no apparent inherent conflict between the plaintiff's RFC that precludes work with motorized equipment and DOT description of the small products assembler II occupation, because the occupation requires performance of "any combination" of the enumerated duties, not all of which entail operation of moving mechanical parts); Dalke v. Astrue, No. EDCV 10-01659-OP, 2011 WL 2433457, at *3-4 (C.D. Cal. June 14, 2011) (same); Bagshaw v. Astrue, No. EDCV 09-1365-CT, 2010 WL 256544, at *6 (C.D. Cal. Jan. 20, 2010) (jobs of bench assembler and electronics worker are not precluded by a limitation to avoid "concentrated exposure" to hazards as nothing prohibits plaintiff from the occasional use of hand or power tools contemplated by the job descriptions, especially since the job descriptions indicate there is no exposure to "moving mechanical parts.") with Jimenez v. Astrue, EDCV 11-1670 JC, 2012 WL 1067945, at *1, 4 (C.D. Cal. Mar. 29, 2012) (the requirements of the jobs of small products assembler I and electronics worker are inconsistent with the plaintiff's RFC that precludes work involving dangerous machinery, because they involve the use of power tools or other machinery); Murphy v. Astrue, No. CV 09-8640-JEM, 2011 WL 124723, at *6 (C.D. Cal. Jan. 13, 2011) (ALJ erred by not obtaining explanation from VE for apparent conflict between hypothetical claimant's inability to work around dangerous moving machinery, and the representative occupation of small

---

[3] This appears to be inconsistent with plaintiff's RFC of "no hazards." See Garcia v.Colvin, No. ED CV 12-1365-PJW, 2013 WL 4605488, at *1 (C.D. Cal. Aug. 28, 2013) (remanding because the VE's testimony that the plaintiff could perform this job despite a limitation to "no hazards," appears to be "in direct conflict with the DOT," and neither the ALJ nor counsel asked whether there was a conflict).

products assembler II involving the use of hand tools, power tools, bench machines, and other machines); Heacock v. Astrue, No. EDCV 10-01625-JEM, 2011 WL 3020919, at *7-8 (C.D. Cal. Jul. 22, 2011) (bench assembler occupation appears to be inconsistent with limitation precluding operation of motorized equipment or working around dangerous moving machinery, and the VE provided no testimony regarding inconsistency with the DOT); Dimaggio v. Astrue, No. EDCV 10-1407 FFM, 2011 WL 2563195, at *3 (C.D. Cal. Jun. 28, 2011) (electronics worker occupation is inconsistent with RFC precluding the use of motorized equipment or working around unprotected machinery, especially where the VE did not explain the apparent deviations).

In this case, even assuming, without deciding, that the use of any power tool or equipment other than a hand tool might have a "moving mechanical part" and constitute a "hazard," the Court notes that, although the job descriptions state that the worker performs "any combination" of the tasks listed in the DOT, they do not state that a worker is required to perform all of them or to use all of the equipment listed. DOT Nos. 726.687-010, 706.684-022, 706.684-042. The Court generally agrees with those cases finding that it is just as likely that the positions would require the worker to use her hands or hand tools in performing these jobs. *See, e.g.,* Ballesteros, 2011 WL 836656, at *4. And, to the extent plaintiff contends that she cannot perform these jobs because they require her to be responsible for the safety of others, she does not provide any evidence to support her contention. Plaintiff merely speculates regarding both her responsibility for the use of any "hazardous" equipment as part of the job, and the potential injury to her potential co-workers due to her use of that equipment. (Joint Stip. at 6.) In contrast, the job's descriptions makes no mention of safety requirements or obligations to co-workers.

The Court finds this case complicated, however, by the fact that the ALJ did not expand upon his definition of "hazard," either in the RFC or in the hypothetical to the VE. (A.R. 12, 64-65.) Nor did the ALJ or plaintiff's counsel seek input from the VE with respect to his understanding of the hypothetical's limitation to "no hazards," especially with regard to the representative occupations. (*Id.* 64-65.) Thus, it is not known whether, and/or how, the VE took

that limitation into account in determining any erosion of the representative jobs in the local or national economies.

Moreover, when the VE's testimony is inconsistent with the requirements of the DOT, an ALJ is required to determine whether a conflict exists and, if so, "'whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT].'" Funches v. Astrue, No. 1:10cv0819 DLB, 2011 WL 1497068, at *6 (E.D. Cal. Apr. 19, 2011) (quoting Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007)). Here, the VE never testified as to whether his testimony was consistent with the DOT. (A.R. 64-65.) In Funches, while the ALJ stated (as in this case) in the decision that the testimony of the VE was consistent with the DOT and concluded that the plaintiff could perform the other work, the court found that there was "no indication in either the testimony or the interrogatories . . . that the ALJ asked the VE whether a conflict existed." Funches, 2011 WL 1497068 at *6. Because the ALJ did not actually pose this question to the VE, the court found that it could not determine whether substantial evidence supported the ALJ's determination that the plaintiff could perform the representative work in light of the RFC limitations. *Id.* The court remanded the case and specifically directed the ALJ to "obtain a reasonable explanation from the VE for the conflict between her testimony and the DOT." *Id.*

The same problem exists in this case. Although the ALJ states that he has "determined that the vocational expert's testimony is consistent with the information contained in the [DOT]" (A.R. 20), the transcript of the hearing shows that he never confirmed on the record that the testimony was indeed consistent (*see generally id.* 64-65). As discussed above, the VE's testimony created an apparent conflict between plaintiff's RFC limitation to "no hazards" and the job descriptions of the representative occupations. Because the ALJ failed to ask the VE whether his testimony conflicted with the information in the DOT, the VE did not address the conflict created by his identification of jobs that the DOT states may require the use of power tools or other machinery and/or exposure to caustic, toxic materials, and plaintiff's RFC precluding

"hazards."

Accordingly, remand is warranted.

## II. The ALJ Provided Clear And Convincing Reasons For Discounting Plaintiff's Credibility.

Plaintiff contends the ALJ did not provide clear and convincing reasons for rejecting her subjective pain testimony. (Joint Stip. at 11.) She also contends the ALJ did not identify which of plaintiff's specific statements he accepted or rejected. (*Id.*)

As noted by the ALJ, plaintiff testified at the hearing that she had three years of college; experienced pain all over her body; could walk five to ten minutes, stand ten minutes, sit 30 minutes, and lift less than five pounds. (A.R. 13.)

Once a disability claimant produces objective medical evidence of an underlying impairment that is reasonably likely to be the source of claimant's subjective symptom(s), all subjective testimony as to the severity of the symptoms must be considered. Moisa v. Barnhart, 367 F.3d 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." Robbins, 466 F.3d at 883. The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. See Thomas v. Barnhart, 278 F.3d 947, 958–59 (9th Cir. 2002); *see also* 20 C.F.R.

§§ 404.1529(c), 416.929(c).

Here, the ALJ found that "[a]fter careful consideration of the evidence . . . [Plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 13.) The ALJ cited no evidence of malingering by plaintiff. (*Id.*) Nonetheless, the ALJ concluded that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible" to the extent they are inconsistent with the ALJ's RFC assessment. (*Id.*) Accordingly, the ALJ's reasons for finding that plaintiff was not credible with respect to her subjective symptom and pain testimony must be "clear and convincing."

Specifically, the ALJ discounted plaintiff's credibility as "poor," for the following reasons: (1) although she alleged disability since June 15, 2008, she was looking for work in 2008 and 2009, and had been to interviews, tending to show that she believed she was capable of working and that employers were seriously considering her applications; (2) physical examinations and diagnostic studies have "generally been normal or shown minor objective findings"; (3) plaintiff's statements are not consistent with the medical record; (4) although she claimed she had difficulty paying attention, she answered questions at the hearing "cogently and rationally without undue hesitation"; (5) plaintiff's testimony and demeanor "are not fully believable," and it appeared she did not answer questions at the hearing in a straightforward manner; (6) plaintiff testified she had pain and difficulty lifting her hand, but was observed to lift her right hand above her head during the hearing. (A.R. 19.)

The Court finds that the ALJ provided clear and convincing reasons for discounting plaintiff's credibility.

First, the ALJ noted that plaintiff looked for work after the time she alleges she was completely disabled, which tends to show she believed she was capable of working and that employers were seriously considering her applications. (*Id.*) The ALJ properly concluded that

plaintiff's continued search for employment detracted from her credibility. *See* Bray v. Astrue, 554 F.3d 1219, 1227 (9th Cir. 2009) (the fact that a claimant has sought out employment weighs against a finding of disability); Sample v. Schweiker, 694 F.2d 639, 642, 643 (9th Cir. 1982) (ALJ entitled to accept admission that claimant actively looking for work to be a tacit admission that he could perform substantial gainful activity); Copeland v. Bowen, 861 F.2d 536, 542 (9th Cir. 1988) (plaintiff's job search efforts discredited his allegations of disability). Thus, this was a clear and convincing reason for discounting plaintiff's credibility.

Second, the ALJ noted that plaintiff's physical examinations and diagnostic studies have "generally been normal or shown minor objective findings." (A.R. 19). The Court notes that in the context of fibromyalgia the Ninth Circuit has recognized that objective findings often "do not establish the presence or absence of [the disease]." Jordan v. Northrop Grumman Corp., 370 F.3d 869, 872 (9th Cir. 2003), *overruled on other grounds by* Abatie v. Alta Health & Life Ins., 458 F.3d 955, 970 (9th Cir. 2006) (en banc). In Jordan, the court recognized that objective tests are administered to rule out other diseases and alternative explanations for the pain, but do not themselves establish the presence or absence of fibromyalgia, as that condition cannot be objectively proven. *Id.* at 877. Thus, the Court does not find this to be a clear and convincing reason for discounting plaintiff's credibility.

Third, the ALJ noted that plaintiff's statements are not consistent with the medical record. (A.R. 19.) In weighing a plaintiff's credibility, an ALJ may use ordinary techniques of credibility evaluation, including prior inconsistent statements concerning symptoms. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008). And, if the ALJ's finding is supported by substantial evidence, the court "'may not engage in second-guessing.'" *Id.* at 959 (citing Thomas 278 F.3d at 959). Here, as an example of plaintiff's inconsistent statements, the ALJ noted that although she told the consultative examining physician that she had been bedridden with her fibromyalgia while living in Connecticut (A.R. 19 (citing *id.* 314)), the notes of her doctor at the time do not support that statement (*id.* (citing *id.* 261-305)). A review of those records supports the ALJ's

finding. For instance, on October 25, 2010, her doctor, Peter J. Ellis, M.D., noted that plaintiff has the ability to use public transportation and to travel to unfamiliar places (*id.* 267); on June 18, 2008, he stated she was "in no acute distress (*id.* 280); on June 30, 2008, he suggested that she exercise (*id.* 283); on July 18, 2008, he noted she had been laid off work "and is considering other options," her upper neck pain "is a little bit improved," and she "is going to work harder and try to engage in more physical activity" (*id.* 285); on October 13, 2008, he noted that plaintiff needed to be re-educated as to the importance of exercise (*id* 286); on November 10, 2008, plaintiff told Dr. Ellis she was "currently out of work, looking for work" (*id.* 288); on February 13, 2009, Dr. Ellis indicated that plaintiff has a "pretty good range of motion," and her "motor strength is normal" (*id.* 292); on October 7 and 26, 2009, Dr. Ellis noted that plaintiff's fibromyalgia was "stable" (*id.* 295, 296); and on December 17, 2009, she told Dr. Ellis that she was exercising with her dog three times a day (*id.* 298). Accordingly, substantial evidence supported the ALJ's finding that plaintiff's prior inconsistent statements regarding her symptoms contradicted her subjective testimony, and this was a clear and convincing reason for discounting her credibility.

Fourth, the ALJ found that, although plaintiff claimed she had difficulty paying attention, she answered questions at the hearing "cogently and rationally without undue hesitation." (*Id.* 19.) An ALJ may use ordinary techniques of credibility evaluation, including observations of a claimant's demeanor at the hearing. Thomas, 278 F.3d at 960. Accordingly, this was a clear and convincing reason for discounting plaintiff's credibility.

Fifth, the ALJ found plaintiff's testimony and demeanor at the hearing to be "not fully believable," as it appeared she did not answer questions in a straightforward manner. (A.R. 19.) For example, he noted that, although plaintiff initially stated that her sister and brother-in-law worked, she later stated her sister was disabled and not employed; then plaintiff testified she was unable to take care of her own hygiene and that her sister, who she had described as disabled since the age of 18, helped plaintiff: bathe; wash her hair; dry her hair, shoulders, and back; and comb her hair. (*Id.*) The ALJ stated that he found this testimony "regarding the help she received

from an allegedly disabled sister to be troubling." (*Id.*) The Court does not find the cited examples to be convincing. The ALJ obtained little or no clarification as to the extent of plaintiff's sister's particular disability (myasthenia gravis) (*id.* 32), and plaintiff immediately clarified that, when she said that her sister worked, she meant that her sister "works with her baby" but is otherwise unemployed (*id.* 31). Accordingly, the Court does not find this to be a clear and convincing reason for discounting plaintiff's credibility.

Finally, the ALJ stated that, although plaintiff testified she had pain and difficulty to lifting her hand, he observed her to lift her right hand above her head during the hearing, thereby not supporting her assertions of pain. (A.R. 19.) A review of the record shows that, although plaintiff lifted her right hand over her head to illustrate the extent of her reach, her testimony was that she could not then reach back to wash her hair, dry her back, dry her shoulders, or comb her hair because of the pain. (*Id.* 63.) Thus, the ALJ misstated plaintiff's testimony and this was not a clear and convincing reason for discounting her pain testimony.

Based on the foregoing, even though the ALJ provided several reasons that were insufficient to reject plaintiff's credibility, any error is harmless in light of the fact that there were other reasons that were legally sufficient. Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (ALJ's error in providing legally insufficient reasons for rejecting claimant's credibility was harmless where the ALJ gave other, sufficient reasons).

**III.   Remand Is Required.**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("[T]he decision of whether to remand for further

proceedings turns upon the likely utility of such proceedings."). However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.* at 1179-81.

As indicated above, the Court has found that reversible error occurred. Because outstanding issues must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate.

On remand the ALJ should clarify what is meant by the RFC limitation to "no hazards"; seek clarification from the VE regarding the jobs plaintiff is able to perform that exist in significant numbers in the local or national economy in view of plaintiff's RFC; determine whether the VE's testimony is consistent with the DOT; and seek an explanation from the VE of any apparent inconsistency between the VE's testimony and the DOT's description of the representative occupations in relation to plaintiff's RFC.

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

DATED: January 23, 2015

_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE